IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

BLUE SPIKE, LLC,

    *Plaintiff*,

v.

MARKANY, INC.,

    *Defendant*.

§
§
§
§
§
§
§
§
§
§
§
§
§
§

JURY TRIAL DEMANDED



## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Blue Spike, LLC files this amended complaint against MarkAny, Inc. ("MarkAny" or "Defendant") alleging twelve (12) counts of infringement of the following Patents-in-Suit:

1.    U.S. Patent No. 7,475,246, titled "Secure personal content server";

2.    U.S. Patent No. 7,770,017, titled "Method and System for Digital Watermarking";

3.	U.S. Patent No. 7,913,087, titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digital data";

4.	U.S. Patent No. 7,953,981, titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digital data";

5.	U.S. Patent No. 8,121,343, titled "Optimization Methods for The Insertion, Protection, and Detection of Digital Watermarks in Digitized Data";

6.	U.S. Patent No. 8,161,286, titled "Method and System for Digital Watermarking";

7.	U.S. Patent No. 8,171,561, titled "Secure personal content server";

8.	U.S. Patent No. 8,175,330, titled "Optimization methods for the insertion, protection, and detection of digital watermarks in digital data";

9.	U.S. Patent No. 8,265,278, titled "System and methods for permitting open access to data objects and for securing data within the data objects";

10.	U.S. Patent No. 8,307,213, titled "Method and System for Digital Watermarking";

11.	U.S. Patent No. 8,739,295, titled "Secure personal content server"; and

12.	U.S. Patent No. 9,231,980, titled "Secure personal content server" as follows:

## NATURE OF THE SUIT

1.	This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

**PARTIES**

2.     Plaintiff Blue Spike, LLC is a Texas limited liability company and has its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703. Blue Spike, LLC is the assignee of the Patent-in-Suit, and has ownership of all substantial rights in the asserted Patents, including the rights to grant sublicenses, to exclude others from using it, and to sue and obtain damages and other relief for past and future acts of patent infringement.

3.     On information and belief, MarkAny, Inc. is a company organized and existing under the laws of Korea, with a principal place of business 10F, Ssanglim Bldg., 151-11, Ssanglim-dong, Jung-gu, Seoul, South Korea.

**JURISDICTION AND VENUE**

4.     This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

5.     The Court has personal jurisdiction over Defendant for at least four reasons: (1) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Defendant regularly does business or solicits business in the District and elsewhere in Texas; (3) Defendant engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in the District and elsewhere in Texas; and (4) Defendant has purposefully established substantial, systematic, and continuous contacts with the District and elsewhere in Texas and should reasonably expect to be haled into court here.

6.      Specifically, Defendant operates a website that solicits sales of the Accused Products to customers in this District and elsewhere in Texas (*see* Exhibit A), Defendant offers online and telephonic support services to customers in this District and elsewhere in Texas (*see* Exhibit B), and the Accused Products are, on information and belief, used to protect and track content provided to consumers in this District and elsewhere in Texas. Given these contacts, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

7.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Defendant does business in the State of Texas, Defendant has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions giving rise to Blue Spike's claims happened in the District, and Defendant is subject to personal jurisdiction in the District. *See Luci Bags LLC v. Younique, LLC*, No. 4:16-CV-00377, 2017 WL 77943, at *3 (E.D. Tex. Jan. 9, 2017) ("For venue purposes, a defendant entity is deemed to reside in any judicial district where it would be subject to the court's personal jurisdiction with respect to the civil action in question.") (citing 28 U.S.C. § 1391(c)(2)).

## FACTUAL BACKGROUND

8.      Protection of intellectual property is a prime concern for creators and publishers of digitized copies of copyrightable works, such as musical recordings, movies, video games, and computer software. Blue Spike founder Scott Moskowitz pioneered—and continues to invent—technology that makes such protection possible.

9.      Moskowitz is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the

International Society for Optics and Photonics (SPIE). As a senior member of the IEEE, Moskowitz has peer-reviewed numerous conference papers and has submitted his own publications.

10.     Moskowitz is an inventor of more than 100 patents, including forensic watermarking, signal abstracts, data security, software watermarks, product license keys, deep packet inspection, license code for authorized software and bandwidth securitization.

11.     The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications. The NSA made the application classified under a "secrecy order" while it investigated his pioneering innovations and their impact on national security.

12.     As an industry trailblazer, Moskowitz has been a public figure and an active author on technologies related to protecting and identifying software and multimedia content. A 1995 *New York Times* article—titled "TECHNOLOGY: DIGITAL COMMERCE; 2 plans for watermarks, which can bind proof of authorship to electronic works"—recognized Moskowitz's company as one of two leading software start-ups in this newly created field. *Forbes* also interviewed Moskowitz as an expert for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of digital watermarking and rights-management technology. He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

13.     Moskowitz has spoken to the RSA Data Security Conference, the International Financial Cryptography Association, Digital Distribution of the Music Industry, and many other organizations about the business opportunities that digital watermarking

creates. Moskowitz also authored *So This Is Convergence?*, the first book of its kind about secure digital-content management. This book has been downloaded over a million times online and has sold thousands of copies in Japan, where Shogakukan published it under the name *Denshi Skashi*, literally "electronic watermark." Moskowitz was asked to author the introduction to *Multimedia Security Technologies for Digital Rights Management*, a 2006 book explaining digital-rights management. Moskowitz authored a paper for the 2002 International Symposium on Information Technology, titled "What is Acceptable Quality in the Application of Digital Watermarking: Trade-offs of Security, Robustness and Quality." He also wrote an invited 2003 article titled "Bandwidth as Currency" for the *IEEE Journal*, among other publications.

14.    Moskowitz and Blue Spike continue to invent technologies that protect intellectual property from unintended use or unauthorized copying.

## THE ACCUSED PRODUCTS

15.    Defendant designs, develops, employs, and/or manufactures digital watermarking technology, including, but not limited to, that in its Aegis SAFER, 3D SAFER, Content SAFER, Content TRACKER, Document SAFER, and e-Page SAFER services and solutions (collectively, the "Accused Products").

16.    Defendant has not sought or obtained a license for any of Blue Spike's patented technologies.

17.    Yet Defendant's Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

18.    Although Blue Spike is not obligated to identify specific claims or claim elements in its complaint, it does so below for Defendant's benefit. *See Rmail Ltd. v. Right*

*Signature, LLC*, 2:11-CV-300-JRG, 2012 WL 2595305, at *2 (E.D. Tex. July 5, 2012) ("Plaintiffs are not required to identify specific claims or claim elements at this stage of the litigation.").

## COUNT 1:
## INFRINGEMENT OF U.S. PATENT NO. 7,475,246

19.   Blue Spike incorporates by reference the allegations in the paragraphs above.

20.   The '246 Patent is valid, is enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

21.   Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '246 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

22.   Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '246 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '246 Patent.

23.   For instance, the Accused Products infringe claim 17 of the '246 Patent which teaches

> A method for creating a secure environment for digital content for a consumer, comprising the following steps:
> sending a message indicating that a user is requesting a copy of a content data set;
> retrieving a copy of the requested content data set;
> embedding at least one robust open watermark into the copy of the requested content data set, said watermark indicating that the copy is authenticated;

embedding a second watermark into the copy of the
requested content data set, said second watermark
being created based upon information transmitted
by the requesting user;

transmitting the watermarked content data set to the
requesting consumer via an electronic network;

receiving the transmitted watermarked content data set
into a Local Content Server (LCS) of the user;

extracting at least one watermark from the transmitted
watermarked content data set;

permitting use of the content data set if the LCS
determines that use is authorized; and

permitting use of the content data set at a predetermined
quality level, said predetermined quality level
having been set for legacy content if the LCS
determines that use is not authorized.

Defendant's Accused Products are a "device-based video watermarking solution [that]

enables operators to deploy a secure environment that truly protects the content of VOD,

linear OTT Streaming and linear broadcast via Smart TVs and Set-Top Boxes" (*digital

content for a consumer*; *sending message; retrieving a copy of the requested content;

transmitting the watermarked content data set; receiving the transmitted watermarked

content data set into a Local Content Server (LCS) of the user*) (Exhibit C). The Accused

Products apply watermarking technology which "is built directly into the device and the

watermark is applied as the video is played" (*embedding at least one robust open

watermark; embedding a second watermark into the copy of the requested content data

set*) (*Id.*). The Accused Products include an "[e]asy and simple interface to embed and

extract watermark" (*extracting at least one watermark; permitting use of the content data

set*) (Exhibit D) and boast support for "UHD, Full HD, and HD screens" (*permitting use

of predefined data set at a predetermined quality level*) (Exhibit E).

24.   Defendant has been and now is indirectly infringing by way of inducing

infringement by others and/or contributing to the infringement by others of the '246

Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '246 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '246 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '246 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused Products. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users and direct infringers of the Accused Products.

25.     Defendant had knowledge of the '246 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, cannot be used without infringing the technology claimed by the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of

the '246 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '246 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp.*, Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement."); *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

26.     Defendant's acts of infringement of the '246 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '246 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

27.     On information and belief, the infringement of the Patents-in-Suit by Defendant has been willful and continues to be willful. Defendant knew that its incorporation of the accused technology in its Accused Products infringed the patents-in-suit because Defendant had knowledge of the Patents-in-Suit in the course of its due diligence and freedom to operate analyses.

28.     On information and belief, Defendant has at least had constructive notice of the '246 Patent by operation of law.

## COUNT 2:

## INFRINGEMENT OF U.S. PATENT NO. 7,770,017

29.     Blue Spike incorporates by reference the allegations in the paragraphs above.

30.     The '017 Patent is valid and was duly and legally issued from the United States

Patent and Trademark Office.

31.     Without a license or permission from Blue Spike, Defendant has infringed one or

more claims of the '017 Patent—directly, contributorily, or by inducement—by

importing, making, using, offering for sale, or selling products and devices that embody

the patented invention, including, without limitation, one or more of the Accused

Products, in violation of 35 U.S.C. § 271.

32.     Defendant has directly infringed by, among other things, practicing all of the steps

of the '017 Patent and/or directing, controlling, and obtaining benefits from its partners,

distributors and retailers practicing all of the steps of the '017 Patent.

33.     For instance, the Accused Products infringe claim 13 of the '017 Patent which

teaches

> A system for authorizing content comprising:
> a receiver to receive a potentially watermarked signal;
> a selector to select a portion of the potentially watermarked signal to detect a digital watermark; and,
> a processor to determine the contents of the detected digital watermark with a key comprising at least one access privilege to the contents of the detected digital watermark.

Defendant's Accused Products are a "device-based video watermarking solution [that]

enables operators to deploy a secure environment that truly protects the content of VOD,

linear OTT Streaming and linear broadcast via Smart TVs and Set-Top Boxes" (*A system*

*for authorizing content comprising: a receiver to receive a potentially watermarked*

*signal*) (Exhibit C). Using the Products, a "[s]trictly authorized user may access the encrypted data" (*a processor to determine the contents of the detected digital watermark with a key comprising at least one access privilege*) (Exhibit F).

34.    Defendant has indirectly infringed by way of inducing infringement by others and/or contributing to the infringement by others of the '017 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '017 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '017 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '017 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused Products. Those whom Defendant has induced to infringe and/or to whose infringement Defendant has contributed to are the end users and direct infringers of the Accused Products.

35.     Defendant had knowledge of the '017 Patent at least as early as the service of this complaint. Defendant knew that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, could not be used without infringing the technology claimed by the Patents-in-Suit, and had no alternative non-infringing uses. Nevertheless, Defendant continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '017 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '017 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp.*, Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement."); *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

36.     Defendant's acts of infringement of the '017 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '017 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

37.     On information and belief, the infringement of the Patents-in-Suit by Defendant has been willful. Defendant knew that its incorporation of the accused technology in its

Accused Products infringed the patents-in-suit because Defendant had knowledge of the Patents-in-Suit in the course of its due diligence and freedom to operate analyses.

38.     On information and belief, Defendant had at least constructive notice of the '017 Patent by operation of law.

## COUNT 3:
## INFRINGEMENT OF U.S. PATENT NO. 7,913,087

39.     Blue Spike incorporates by reference the allegations in the paragraphs above.

40.     The '087 Patent is valid and was duly and legally issued from the United States Patent and Trademark Office.

41.     Without a license or permission from Blue Spike, Defendant has infringed one or more claims of the '087 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

42.     Defendant has directly infringed by, among other things, practicing all of the steps of the '087 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '087 Patent.

43.     For instance, the Accused Products infringe claim 11 of the '087 Patent which teaches

> A system for decoding at least a portion of a digital watermark using a digital filter and at least one key comprising:
> > a processor for identifying at least one change to the digital signal that will be affected by the digital filter and at least one key for determining at least one embedding location;

> and a decoder for decoding at least a portion of the digital watermark based on the at least one identified change to the digital signal and the embedding location determined by said at least one key.

The Accused Products include an "[e]asy and simple interface to embed and extract watermark" (*A system for decoding at least a portion of a digital watermark using a digital filter and at least one key*) (Exhibit D) and "take[] advantage of the latest and highly recognized encryption technology" (*a processor for identifying at least one change to the digital signal that will be affected by the digital filter and at least one key for determining at least one embedding location; and a decoder for decoding at least a portion of the digital watermark based on the at least one identified change to the digital signal and the embedding location determined by said at least one key*") (Exhibit G).

44.   Defendant has indirectly infringed by way of inducing infringement by others and/or contributing to the infringement by others of the '087 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '087 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '087 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '087 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing*

*System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused Products. Those whom Defendant has induced to infringe and/or to whose infringement Defendant has contributed to are the end users and direct infringers of the Accused Products.

45.     Defendant had knowledge of the '087 Patent at least as early as the service of this complaint. Defendant knew that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, could not be used without infringing the technology claimed by the Patents-in-Suit, and had no alternative non-infringing uses. Nevertheless, Defendant continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '087 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '087 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp.*, Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement."); *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

46.     Defendant's acts of infringement of the '087 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a

result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '087 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

47.     On information and belief, the infringement of the Patents-in-Suit by Defendant has been willful. Defendant knew that its incorporation of the accused technology in its Accused Products infringed the patents-in-suit because Defendant had knowledge of the Patents-in-Suit in the course of its due diligence and freedom to operate analyses.

48.     On information and belief, Defendant had at least constructive notice of the '087 Patent by operation of law.

## COUNT 4:
## INFRINGEMENT OF U.S. PATENT NO. 7,953,981

49.     Blue Spike incorporates by reference the allegations in the paragraphs above.

50.     The '981 Patent is valid and was duly and legally issued from the United States Patent and Trademark Office.

51.     Without a license or permission from Blue Spike, Defendant has infringed one or more claims of the '981 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

52.     Defendant has directly infringed by, among other things, practicing all of the steps of the '981 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '981 Patent.

53.    For instance, the Accused Products infringe claim 1 of the '981 Patent which teaches

> An article of manufacture comprising a non-transitory machine readable medium, having thereon stored instructions adapted to be executed by a processor, which instructions when executed by a processor result in a process comprising:
>> providing a watermark and a signal to be encoded;
>> attaching a timestamp to the watermark; and
>> encoding the signal with the timestamp and the watermark.

Defendant's Accused Products employ "[w]atermarking for video content [that] allows the creator or service operator to embed a unique and imperceptible information of copyright in the content as it is playing" (*providing a watermark and a signal to be encoded; attaching a timestamp to the watermark; and encoding the signal with the timestamp and the watermark*) (Exhibit C).

54.    Defendant has indirectly infringed by way of inducing infringement by others and/or contributing to the infringement by others of the '981 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '981 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '981 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '981 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of

Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused Products. Those whom Defendant has induced to infringe and/or to whose infringement Defendant has contributed to are the end users and direct infringers of the Accused Products.

55.    Defendant had knowledge of the '981 Patent at least as early as the service of this complaint. Defendant knew that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, could not be used without infringing the technology claimed by the Patents-in-Suit, and had no alternative non-infringing uses. Nevertheless, Defendant continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '981 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '981 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp.*, Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement."); *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

56.     Defendant's acts of infringement of the '981 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '981 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

57.     On information and belief, the infringement of the Patents-in-Suit by Defendant has been willful. Defendant knew that its incorporation of the accused technology in its Accused Products infringed the patents-in-suit because Defendant had knowledge of the Patents-in-Suit in the course of its due diligence and freedom to operate analyses.

58.     On information and belief, Defendant had at least constructive notice of the '981 Patent by operation of law.

## COUNT 5:
## INFRINGEMENT OF U.S. PATENT NO. 8,121,343

59.     Blue Spike incorporates by reference the allegations in the paragraphs above.

60.     The '343 Patent is valid and was duly and legally issued from the United States Patent and Trademark Office.

61.     Without a license or permission from Blue Spike, Defendant has infringed one or more claims of the '343 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

62.     Defendant has directly infringed by, among other things, practicing all of the steps

of the '343 Patent and/or directing, controlling, and obtaining benefits from its partners,

distributors and retailers practicing all of the steps of the '343 Patent.

63.     For instance, the Accused Products infringe claim 1 of the '343 Patent which

teaches

> A method of detecting a watermark message comprising:
> identifying, with a processor, signal characteristics
> suitable for embedding one or more bits of a
> watermark message within a signal;
> using a watermarking key to detect said watermark
> message from the identified signal characteristics.

The Accused Products include an "[e]asy and simple interface to embed and extract

watermark" (*a method of detecting a watermark message*) (Exhibit D) and "take[]

advantage of the latest and highly recognized encryption technology" (*identifying, with a

processor, signal characteristics*; *using a watermarking key to detect said watermark*)

(Exhibit G).

64.     Defendant has indirectly infringed by way of inducing infringement by others

and/or contributing to the infringement by others of the '343 Patent in the State of Texas,

in this judicial district, and elsewhere in the United States, by, among other things,

making, using, importing, offering for sale, and/or selling, without license or authority,

products for use in systems that fall within the scope of one or more claims of the '343

Patent. Such products include, without limitation, one or more of the Accused Products.

Such products have no substantial non-infringing uses and are for use in systems that

infringe the '343 Patent.  By making, using, importing offering for sale, and/or selling

such products, Defendant injured Blue Spike and is thus liable to Blue Spike for

infringement of the '343 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to

indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused Products. Those whom Defendant has induced to infringe and/or to whose infringement Defendant has contributed to are the end users and direct infringers of the Accused Products.

65.     Defendant had knowledge of the '343 Patent at least as early as the service of this complaint. Defendant knew that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, could not be used without infringing the technology claimed by the Patents-in-Suit, and had no alternative non-infringing uses. Nevertheless, Defendant continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '343 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '343 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp.*, Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement."); *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

66.    Defendant's acts of infringement of the '343 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '343 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

67.    On information and belief, the infringement of the Patents-in-Suit by Defendant has been willful. Defendant knew that its incorporation of the accused technology in its Accused Products infringed the patents-in-suit because Defendant had knowledge of the Patents-in-Suit in the course of its due diligence and freedom to operate analyses.

68.    On information and belief, Defendant had at least constructive notice of the '981 Patent by operation of law.

## COUNT 6:
## INFRINGEMENT OF U.S. PATENT NO. 8,161,286

69.    Blue Spike incorporates by reference the allegations in the paragraphs above.

70.    The '286 Patent is valid and was duly and legally issued from the United States Patent and Trademark Office.

71.    Without a license or permission from Blue Spike, Defendant has infringed one or more claims of the '286 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

72.     Defendant has directly infringed by, among other things, practicing all of the steps of the '286 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '286 Patent.

73.     For instance, the Accused Products infringe claim 1 of the '286 Patent which teaches

> A method of decoding digital watermarks, comprising:
>> receiving a content signal encoded with a digital watermark; and
>> decoding said digital watermark from said content signal using a key that comprises information describing where in the content signal said digital watermark is encoded.

Defendant's Accused Products include an "[e]asy and simple interface to embed and extract watermark" (*a method of decoding digital watermarks*) (Exhibit D) and "take[] advantage of the latest and highly recognized encryption technology" (*receiving a content signal encoded with a digital watermark*; *and decoding said digital watermark from said content signal using a key*) (Exhibit G).

74.     Defendant has indirectly infringed by way of inducing infringement by others and/or contributing to the infringement by others of the '286 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '286 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '286 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for

infringement of the '286 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused Products. Those whom Defendant has induced to infringe and/or to whose infringement Defendant has contributed to are the end users and direct infringers of the Accused Products.

75.     Defendant had knowledge of the '286 Patent at least as early as the service of this complaint. Defendant knew that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, could not be used without infringing the technology claimed by the Patents-in-Suit, and had no alternative non-infringing uses. Nevertheless, Defendant continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '286 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '286 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp.*, Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement."); *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13,

2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

76.     Defendant's acts of infringement of the '286 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '286 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

77.     On information and belief, the infringement of the Patents-in-Suit by Defendant has been willful. Defendant knew that its incorporation of the accused technology in its Accused Products infringed the patents-in-suit because Defendant had knowledge of the Patents-in-Suit in the course of its due diligence and freedom to operate analyses.

78.     On information and belief, Defendant had at least constructive notice of the '286 Patent by operation of law.

## COUNT 7:
## INFRINGEMENT OF U.S. PATENT NO. 8,171,561

79.     Blue Spike incorporates by reference the allegations in the paragraphs above.

80.     The '561 Patent is valid, is enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

81.     Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '561 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

82.    Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '561 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '561 Patent.

83.    For instance, the Accused Products infringe claim 9 of the '561 Patent which teaches

> A method for using a local content server (LCS), said LCS comprising an LCS communications port; an LCS storage unit for storing digital data; an LCS domain processor for processing digital data; and an LCS identification code uniquely associated with said LCS, said method comprising:
>
> > said LCS storing in said LCS storage unit a plurality of rules for processing a data set;
> >
> > said LCS receiving via said communications port a first data set that includes data defining first content;
> >
> > said LCS using said domain processor to determine from inspection of said first data set for a watermark, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy;
> >
> > said LCS using said first data set status value to determine which of a set of rules to apply to process said first data set prior to storage of a processed second data set resulting from processing of said first data set, in said LCS storage unit;
> >
> > said LCS determining, at least in part, from rights associated with a user identification associated with a prompt received by said LCS for said first content, a quality level at which to transmit said first content, wherein said quality level is one of at least unsecure, secure, and legacy; and
> >
> > wherein a quality level of legacy means that said first content does not include said watermark.

Defendant's Accused Products are a "device-based video watermarking solution [that] enables operators to deploy a secure environment that truly protects the content of VOD, linear OTT Streaming and linear broadcast via Smart TVs and Set-Top Boxes" (*a method for using a local content server with communications port, storage, domain processor, and unique ID*; *said LCS storing/receiving data sets/content*) (Exhibit C). The Accused Products boast support for "UHD, Full HD, and HD screens" (*LCS inspecting data set for watermark and determining ... unsecure, secure, legacy*; *wherein a quality level of legacy means that said first content does not include said watermark*) (Exhibit E).

84.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '561 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '561 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '561 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '561 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of

its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused Products. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users and direct infringers of the Accused Products.

85.     Defendant had knowledge of the '561 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, cannot be used without infringing the technology claimed by the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '561 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '561 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp*., Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement."); *Uniloc USA, Inc. v. Avaya Inc*., Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

86.     Defendant's acts of infringement of the '561 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the

'561 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

87.     On information and belief, the infringement of the Patents-in-Suit by Defendant has been willful and continues to be willful. Defendant knew that its incorporation of the accused technology in its Accused Products infringed the patents-in-suit because Defendant had knowledge of the Patents-in-Suit in the course of its due diligence and freedom to operate analyses.

88.     On information and belief, Defendant has at least had constructive notice of the '561 Patent by operation of law.

**COUNT 8:**

**INFRINGEMENT OF U.S. PATENT NO. 8,175,330**

89.     Blue Spike incorporates by reference the allegations in the paragraphs above.

90.     The '330 Patent is valid and was duly and legally issued from the United States Patent and Trademark Office.

91.     Without a license or permission from Blue Spike, Defendant has infringed one or more claims of the '330 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

92.     Defendant has directly infringed by, among other things, practicing all of the steps of the '330 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '330 Patent.

93.    For instance, the Accused Products infringe claim 1 of the '330 Patent which teaches

> An article of manufacture comprising a machine readable medium, having thereon stored instructions adapted to be executed by a processor, which instructions when executed result in a process comprising:
> > identifying locations within a digital signal which are suitable for embedding one or more bits of a watermark message; and
> > embedding said watermark message into said digital signal at said locations.

Defendant's Accused Products employ "[w]atermarking for video content [that] allows the creator or service operator to embed a unique and imperceptible information of copyright in the content as it is playing" (*identifying locations within a digital signal which are suitable for embedding*; *and embedding said watermark message*) (Exhibit C).

94.    Defendant has indirectly infringed by way of inducing infringement by others and/or contributing to the infringement by others of the '330 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '330 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '330 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '330 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing*

*System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at \*3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused Products. Those whom Defendant has induced to infringe and/or to whose infringement Defendant has contributed to are the end users and direct infringers of the Accused Products.

95.     Defendant had knowledge of the '330 Patent at least as early as the service of this complaint. Defendant knew that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, could not be used without infringing the technology claimed by the Patents-in-Suit, and had no alternative non-infringing uses. Nevertheless, Defendant continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '330 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '330 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp*., Case 6:12-cv-145, Dkt. 54, at \*7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at \*2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement."); *Uniloc USA, Inc. v. Avaya Inc*., Case 6:15-cv-1158, Dkt. No 48, at \*8 (E.D. Tex. May 13, 2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

96.     Defendant's acts of infringement of the '330 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a

result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to

35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the

'330 Patent will continue to damage Blue Spike, causing it irreparable harm, for which

there is no adequate remedy at law, warranting an injunction from the Court.

97.     On information and belief, the infringement of the Patents-in-Suit by Defendant

has been willful. Defendant knew that its incorporation of the accused technology in its

Accused Products infringed the patents-in-suit because Defendant had knowledge of the

Patents-in-Suit in the course of its due diligence and freedom to operate analyses.

98.     On information and belief, Defendant had at least constructive notice of the '330

Patent by operation of law.


## COUNT 9:
## INFRINGEMENT OF U.S. PATENT NO. 8,265,278

99.     Blue Spike incorporates by reference the allegations in the paragraphs above.

100.    The '278 Patent is valid, is enforceable, and was duly and legally issued from the

United States Patent and Trademark Office.

101.    Without a license or permission from Blue Spike, Defendant has infringed and

continues to infringe on one or more claims of the '278 Patent—directly, contributorily,

or by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of

the Accused Products, in violation of 35 U.S.C. § 271.

102.    Defendant has been and now is directly infringing by, among other things,

practicing all of the steps of the '278 Patent and/or directing, controlling, and obtaining

benefits from its partners, distributors and retailers practicing all of the steps of the '278 Patent.

103.    For instance, the Accused Products infringe claim 1 of the '278 Patent which teaches

> A method comprising:
>   receiving a digital signal in a system including at least one processor;
>   selecting, using said at least one processor, at least one signal characteristic of the digital signal;
>   manipulating, using said at least one processor, the at least one signal characteristic to degrade the digital signal;
>   associating, using said at least one processor, at least one digital watermark with the degraded signal.

Defendant's Accused Products are a "device-based video watermarking solution [that] enables operators to deploy a secure environment that truly protects the content of VOD, linear OTT Streaming and linear broadcast via Smart TVs and Set-Top Boxes" (*receiving a digital signal*) (Exhibit C). They allow a "creator or service operator to embed a unique and imperceptible information of copyright in the content as it is playing on various customer's devices and service system across UHD, Full HD, and HD screens" (*manipulating using said at least one processor, the at least one signal characteristic to degrade the digital signal*; *associating at least one digital watermark*) (Exhibit E).

104. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '278 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '278 Patent. Such products include, without limitation, one or more

of the Accused Products.  Such products have no substantial non-infringing uses and are for use in systems that infringe the '278 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '278 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at \*3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused Products. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users and direct infringers of the Accused Products.

105.    Defendant had knowledge of the '278 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, cannot be used without infringing the technology claimed by the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '278 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '278 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp.*, Case 6:12-cv-145, Dkt. 54, at \*7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at \*2 (E.D. Tex. Mar.

24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement."); *Uniloc USA, Inc. v. Avaya Inc*., Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

106.    Defendant's acts of infringement of the '278 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '278 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

107.    On information and belief, the infringement of the Patents-in-Suit by Defendant has been willful and continues to be willful. Defendant knew that its incorporation of the accused technology in its Accused Products infringed the patents-in-suit because Defendant had knowledge of the Patents-in-Suit in the course of its due diligence and freedom to operate analyses.

108.    On information and belief, Defendant has at least had constructive notice of the '278 Patent by operation of law.

## COUNT 10:
## INFRINGEMENT OF U.S. PATENT NO. 8,307,213

109.    Blue Spike incorporates by reference the allegations in the paragraphs above.

110.    The '213 Patent is valid and was duly and legally issued from the United States Patent and Trademark Office.

111.    Without a license or permission from Blue Spike, Defendant has infringed one or more claims of the '213 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

112.    Defendant has directly infringed by, among other things, practicing all of the steps of the '213 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '213 Patent.

113.    For instance, the Accused Products infringe claim 1 of the '213 Patent which teaches

> An article of manufacture comprising a nontransitory medium having stored thereon instructions adapted to be executed by a processor, the instructions which, when executed, result in the process comprising: receiving content to be watermarked and at least one digital watermark; and watermarking the content with the received at least one digital watermark using a key comprising information describing where in the content the received at least one digital watermark is to be encoded.

Defendant's Accused Products include an "[e]asy and simple interface to embed and extract watermark" (*receiving a content signal encoded with a digital watermark*) (Exhibit D) and "take[] advantage of the latest and highly recognized encryption technology" (*decoding said digital watermark from said content signal using a key*) (Exhibit G).

114. Defendant has indirectly infringed by way of inducing infringement by others and/or contributing to the infringement by others of the '213 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things,

making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '213 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '213 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '213 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused Products. Those whom Defendant has induced to infringe and/or to whose infringement Defendant has contributed to are the end users and direct infringers of the Accused Products.

115.    Defendant had knowledge of the '213 Patent at least as early as the service of this complaint. Defendant knew that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, could not be used without infringing the technology claimed by the Patents-in-Suit, and had no alternative non-infringing uses. Nevertheless, Defendant continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '213 Patent by actively inducing infringement and/or is liable as contributory infringer of one

or more claims of the '213 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp.*, Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement."); *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

116.    Defendant's acts of infringement of the '213 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '213 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

117.    On information and belief, the infringement of the Patents-in-Suit by Defendant has been willful. Defendant knew that its incorporation of the accused technology in its Accused Products infringed the patents-in-suit because Defendant had knowledge of the Patents-in-Suit in the course of its due diligence and freedom to operate analyses.

118.    On information and belief, Defendant had at least constructive notice of the '213 Patent by operation of law.

## COUNT 11:
## INFRINGEMENT OF U.S. PATENT NO. 8,739,295

119.    Blue Spike incorporates by reference the allegations in the paragraphs above.

120.    The '295 Patent is valid, is enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

121.    Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '295 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

122.    Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '295 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '295 Patent.

123.    For instance, the Accused Products infringe claim 13 of the '295 Patent which teaches

> A method for using a local content server system (LCS), said LCS comprising an LCS communications port; an LCS storage unit for storing digital data in non-transitory form; an LCS domain processor that imposes a plurality of rules and procedures for content being transferred between said LCS and devices outside said LCS, thereby defining a first LCS domain; and a programmable address module programmed with an LCS identification code uniquely associated with said LCS domain processor; comprising:
>> storing, in said LCS storage unit, a plurality of rules for processing a data set;
>> receiving, via said LCS communications port, a first data set that includes data defining first content;
>> said LCS determining whether said first content belongs to a different LCS domain than said first LCS domain;
>> said LCS excluding from said first LCS domain said first content when said LCS determines that said first content belongs to said different LCS domain;

said LCS domain processor determining, from said first data set, a first data set status value of said first data set to be at least one of unsecure, secure, and legacy;

said LCS determining, using said first data set status value, which of a set of rules to apply to process said first data set; and

said LCS determining, at least in part from rights associated with an identification associated with a prompt received by said LCS for said first content, a quality level at which to transmit said first content, wherein said quality level is one of at least unsecure, secure, and legacy;

said LCS transmitting said first content at the determined quality level.

Defendant's Accused Products are a "device-based video watermarking solution [that] enables operators to deploy a secure environment that truly protects the content of VOD, linear OTT Streaming and linear broadcast via Smart TVs and Set-Top Boxes" (*a method for using a local content server system (LCS), said LCS comprising an LCS communications port; an LCS storage unit for storing digital data in non-transitory form; an LCS domain processor that imposes a plurality of rules and procedures for content being transferred between said LCS and devices outside said LCS*) (Exhibit C). The Accused Products boast support for "UHD, Full HD, and HD screens" (*LCS determining a quality level and transmitting the content at the determined level*) (Exhibit E).

124. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '295 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one

or more claims of the '295 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '295 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '295 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig*., 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc*., No. 2:10-cv-175, 2011 WL 1004880, at *3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused Products. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users and direct infringers of the Accused Products.

125.    Defendant had knowledge of the '295 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, cannot be used without infringing the technology claimed by the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '295 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '295 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp*., Case 6:12-cv-145, Dkt. 54, at *7 (E.D. Tex. Mar. 21,

2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at *2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement."); *Uniloc USA, Inc. v. Avaya Inc*., Case 6:15-cv-1158, Dkt. No 48, at *8 (E.D. Tex. May 13, 2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

126.    Defendant's acts of infringement of the '295 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '295 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

127.    On information and belief, the infringement of the Patents-in-Suit by Defendant has been willful and continues to be willful. Defendant knew that its incorporation of the accused technology in its Accused Products infringed the patents-in-suit because Defendant had knowledge of the Patents-in-Suit in the course of its due diligence and freedom to operate analyses.

128.    On information and belief, Defendant has at least had constructive notice of the '295 Patent by operation of law.

## COUNT 12:
## INFRINGEMENT OF U.S. PATENT NO. 9,231,980

129.    Blue Spike incorporates by reference the allegations in the paragraphs above.

130.    The '246 Patent is valid, is enforceable, and was duly and legally issued from the United States Patent and Trademark Office.

131.    Without a license or permission from Blue Spike, Defendant has infringed and continues to infringe on one or more claims of the '246 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

132.    Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '246 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '246 Patent.

133.    For instance, the Accused Products infringe claim 1 of the '980 Patent which teaches

> A system of protecting digital content against unauthorized copying and distribution, comprising:
> a Satellite Unit (SU) having an SU unique identification, an SU storage unit for storing digital data, and said SU capable of receiving and transmitting digital content;
> a local content server system (LCS);
> an interface to permit the LCS to communicate with said SU;
> said LCS comprising:
> a) a communications port in communication for connecting the system via a network to at least one Secure Electronic Content Distributor (SECD), said SECD capable of storing a plurality of data sets, capable of receiving a request to transfer at least one content data set, and capable of transmitting said at least one content data set in a secured transmission,
> b) a non-transient LCS rewritable storage medium whereby content received from outside the LCS may be stored and retrieved,
> c) a domain processor that imposes rules and procedures for content being transferred between

the LCS and devices outside the LCS, thereby defining a first LCS domain, and

d) an LCS identification code, and said domain processor permitting the LCS to receive digital content from outside the LCS provided the LCS first determines that the digital content being delivered to the LCS is authorized for use by the LSC;

wherein said LCS determines that the digital content being delivered to the LCS is authorized for use by the LCS by comparing a watermark present in said digital content with an LCS watermark associated with said LCS, thereby making a watermark match determination, and only if said watermark match determination indicates a match then said LCS storing said digital content in said first LCS domain in said non-transient LCS rewritable storage medium in encrypted form, and only if said watermark match determination indicates a mismatch then said LCS rejecting said digital content from said first LCS domain so that said digital content is not stored in said first LCS domain;

said LCS determining if a watermark is present in said digital content, thereby making a watermark determination;

only if said watermark determination indicates no watermark is present in said digital content, said LCS degrading said digital content resulting in degraded digital content and then storing said degraded digital content in encrypted form in said first LCS domain in said non-transient LCS rewritable storage media; and

only if said watermark determination indicates a watermark is present in said digital content, said LCS making said watermark match determination;

wherein said LCS is designed to transmit either said digital content stored in said first LCS domain or said degraded digital content stored in said first LCS domain via said interface to said SU;

wherein said SU is designed to watermark the digital content that the SU receives from said LCS with an SU watermark, wherein said SU watermark is unique to said SU;

> wherein the SU is designed to play the digital content;
> transmit the digital content to a player other than the
> SU; or both.

Defendant's Accused Products are a "device-based video watermarking solution [that] enables operators to deploy a secure environment that truly protects the content of VOD, linear OTT Streaming and linear broadcast via Smart TVs and Set-Top Boxes" (*a method for protecting content using a satellite unit with communications port, storage, domain processor, and unique ID, and a local content server system ... wherein said LCS determines that the digital content being delivered to the LCS is authorized*) (Exhibit C). The Accused Products include an "[e]asy and simple interface to embed and extract watermark" (Exhibit D) and boast support for "UHD, Full HD, and HD screens" (Exhibit E) (*LCS detecting a watermark and transmitting either regular or degraded content to satellite unit*).

134. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '246 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '246 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '246 Patent.  By making, using, importing offering for sale, and/or selling such products, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '246 Patent under 35 U.S.C. § 271. It is not necessary for Plaintiff to indicate specific customers directly infringing the Patents-in-Suit through the

use of Defendant's Accused Products. *See In re Bill of Lading Transmission and Processing System Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175, 2011 WL 1004880, at \*3 (E.D. Tex. Mar. 18, 2011). Even so, Defendant induces and contributes to the infringement of its customers, who use the infringing functionality, and its partners and resellers, who offer for sale and sell the Accused Products. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users and direct infringers of the Accused Products.

135.    Defendant had knowledge of the '246 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, cannot be used without infringing the technology claimed by the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. Thus, Defendant is liable for infringement of one or more claims of the '246 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '246 Patent under 35 U.S.C. § 271. *See Soverain Software LLC v. Oracle Corp.*, Case 6:12-cv-145, Dkt. 54, at \*7 (E.D. Tex. Mar. 21, 2014); *Tierra Intelectual Borinquen v. ASUS*, 2014 WL 1233040, at \*2 (E.D. Tex. Mar. 24, 2014) ("[P]re-suit knowledge is not required to successfully plead contributory infringement."); *Uniloc USA, Inc. v. Avaya Inc.*, Case 6:15-cv-1158, Dkt. No 48, at \*8 (E.D. Tex. May 13, 2016) ("[A] pre-suit knowledge requirement for induced infringement would lead to absurd results.").

136.    Defendant's acts of infringement of the '246 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '246 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

137.    On information and belief, the infringement of the Patents-in-Suit by Defendant has been willful and continues to be willful. Defendant knew that its incorporation of the accused technology in its Accused Products infringed the patents-in-suit because Defendant had knowledge of the Patents-in-Suit in the course of its due diligence and freedom to operate analyses.

138.    On information and belief, Defendant has at least had constructive notice of the '246 Patent by operation of law.

## REQUEST FOR RELIEF

Blue Spike incorporates each of the allegations in paragraphs 1 through 190 above and respectfully asks the Court to:

(a)    enter a judgment that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patent-in-Suit;

(b)    enter a judgment awarding Blue Spike all damages adequate to compensate it for Defendant's infringement of, direct or contributory, or inducement to infringe, the Patent-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)     enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of one or more of the Patent-in-Suit;

(d)     issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, its directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patent-in-Suit;

(e)     enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f)     award Blue Spike all other relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Blue Spike demands a jury trial on all issues that may be determined by a jury.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
**GARTEISER HONEA, PLLC**
119 W Ferguson St.
Tyler, Texas 75702
Tel/Fax: (888) 908-4400

Kirk J. Anderson
  California Bar No. 289043
  kanderson@ghiplaw.com
Ian N. Ramage

California Bar No. 224881
iramage@ghiplaw.com
**GARTEISER HONEA, PC**
44 North San Pedro Road
San Rafael, California 94903
Telephone: (415) 785-3762
Facsimile: (415) 785-3805

*Counsel for Blue Spike, LLC*

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this date stamped above.

                                       /s/ Randall T. Garteiser   
                                       Randall T. Garteiser